IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY WADE | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-5201 |
| | : | |
| WARDEN RONALD NARDOLILLO, | : | |
| et al. | : | |

**MEMORANDUM AND ORDER**

Kauffman, J.                                                                               May 29, 2007

Plaintiff Jeffrey Wade ("Plaintiff") brings this pro se action against Defendants Warden Ronald Nardolillo, Deputy Warden Matt Holms, Sergeant Adams, Grievance Coordinator Emmanuel Assante, Correctional Officer S. Motley, and Correctional Officer Saleem Jones, alleging violations of 42 U.S.C. § 1983 ("§ 1983"). Now before the Court is Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 (the "Motion").[1] For the reasons that follow, the Motion will be denied.

**I.     BACKGROUND**

Accepting as true the allegations of the Complaint, the pertinent facts are as follows: On September 25, 2006, Plaintiff, an inmate at the George W. Hill Correctional Facility, was given permission by a control room officer to retrieve a basketball from a storage area in the hallway of his prison unit. See Complaint p. 4. While he was retrieving the ball, Correctional Officer Motley ("Motley") arrived on the scene and radioed that there was a hostile inmate in the

---

[1] As will be discussed below, the Court need not convert Defendants' Motion to a motion for summary judgment.

hallway.  Id.  Sergeant Adams ("Adams"), Correctional Officer Jones ("Jones"), and other police officers not named in this action responded to the radio call.  Plaintiff immediately was handcuffed and escorted to a maximum security lockdown unit.  Id.  While transferring Plaintiff, Adams allegedly sprayed him in the face with pepper spray approximately seven times.  Id. at p. 4-5.  Adams then allegedly ran him into doors and walls, kicked him several times, and dislocated his right arm.  Id. at p. 5.  Plaintiff later received a misconduct report from Adams for assault, as well as a misconduct report from Motley.  Id.

Plaintiff filed a grievance regarding this incident on September 27, 2006.  See George W. Hill Correctional Facility Inmate Grievance Form, dated September 27, 2006, attached to Defendants' Motion to Dismiss at Exhibit A ("Grievance Form").  On October 10, 2006, Plaintiff received the results of the grievance investigation, which concluded that the use of force had been justified.  See George W. Hill Correctional Facility Grievance Investigation Request, attached to Plaintiff's Answer to Defendants' Motion to Dismiss ("Pl. Resp.").  That same day, he filed a handwritten appeal.  See George W. Hill Correctional Facility Inmate Grievance Appeal, dated October 10, 2006 ("Initial Grievance Appeal"), attached to Pl. Resp.

On October 16, 2006, Grievance Coordinator Assante ("Assante") returned Plaintiff's appeal form solely on the technicality that he had written an incorrect grievance number (06-04-241) on the form.[2]  At that time, Plaintiff was told by Assante that he could "resubmit this appeal if this is in reference to grievance #06-09-241 which [he did] have on record."  Id.  Plaintiff resubmitted his appeal six days later, on October 22, 2006, clearly using the correct grievance

---

[2] The handwritten number was at most incorrect in only one digit.  It should be noted, however, that the pro se plaintiff's writing could be read to include the correct number; i.e., the "04" could be read "09."

number.  See George W. Hill Correctional Facility Inmate Grievance Appeal, dated October 22, 2006 ("Resubmitted Grievance Appeal"), attached to Pl. Resp.  However, Assante then denied the Resubmitted Grievance Appeal on October 23, 2006, on the ground that the limitations period for filing such an appeal had expired.  Id.  Plaintiff filed the instant action on November 30, 2006.

## II.     LEGAL STANDARD

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).  A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts provable by plaintiff.  See Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

In briefing the Motion, the parties attached documents pertaining to Plaintiff's grievance proceedings.  On a motion to dismiss, the Court may consider undisputedly authentic grievance documents for purposes of deciding whether a prisoner has exhausted his administrative remedies.  Spruill v. Gillis, 372 F. 3d 218, 223 (3d Cir. 2004).  Therefore, since the Court will consider the grievance documents only with respect to Defendants' argument that Plaintiff has failed to exhaust his administrative remedies, the Court need not convert Defendants' Motion into a motion for summary judgment.  Id.

## III.    DISCUSSION

Defendants argue that Plaintiff's Complaint should be dismissed on several grounds:   (1)

Plaintiff has failed to exhaust prison grievance procedures as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e; (2) Warden Nardolillo ("Nardolillo") and Deputy Warden Holms ("Holms") had no personal involvement in the incident, and Plaintiff has not successfully pled a claim for supervisory liability; (3) All Defendants are entitled to qualified immunity; and (4) Plaintiff has not set forth a legally sufficient claim for excessive force under the Eighth Amendment.[3]

### 1.     Exhaustion Under the PLRA

The PLRA provides that a prisoner may not bring a case pursuant to § 1983 "until such administrative procedures as are available are exhausted." 42 U.S.C. §1997e(a); see also Spruill, 372 F.3d at 222 (citing 42 U.S.C. §1997e(a)). The Third Circuit has held that the PLRA includes a procedural default component that requires prisoners to "properly" exhaust all administrative remedies. Spruill, 372 F.3d at 222; Kirk v. Roan, 160 Fed. Appx. 188, 190 (3d Cir. 2005) (citing Spruill). In evaluating whether a prisoner has "properly" exhausted his administrative remedies, the Court must examine whether he has complied with the prison's administrative regulations governing grievances prior to filing his lawsuit, or whether there has been a waiver of such regulations by prison officials. Spruill, 372 F.3d at 222. However, failure to exhaust administrative remedies is an affirmative defense that Defendants must plead and prove. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002) (citing Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997)).

Defendants argue that Plaintiff has not properly exhausted his administrative remedies

---

[3]  Since the Court must determine whether Plaintiff has set forth a legally sufficient claim for excessive force in order to decide the qualified immunity issue, the Court will not address this argument in a separate section.

because he failed to timely appeal the results of the prison's grievance investigation.  See Motion at ¶¶ 23-32; Resubmitted Grievance Appeal (denying Plaintiff's appeal as untimely).  In his Response, Plaintiff argues that Assante gave him permission to resubmit his appeal after he submitted his handwritten Initial Grievance Appeal under a one-digit-wrong grievance number, and then nonetheless, rejected his appeal as untimely when he resubmitted under the clearly correct grievance number.  See Pl. Resp. at ¶¶ 9, 10.[4]

When reviewing a motion to dismiss, the Court must view allegations regarding exhaustion in the light most favorable to Plaintiff.  Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002).  Plaintiff submitted his Initial Grievance Appeal on October 10, 2006, the same day he received the results of the prison's investigation of his grievance.  See Initial Grievance Appeal.  Thus, his appeal was submitted well within the seven-day time limit.  Assante delayed six days, until October 16, 2006, before notifying Plaintiff that his appeal was rejected on the hyper-technical ground that it had been filed under a grievance number that appeared to be off by only one digit (a "4" instead of a "9").  In fact, the allegedly-incorrect digit may have been misread by Assante since it was handwritten by a pro se litigant.  See id.  Moreover, Assante was able to identify the correct grievance number prior to returning the appeal to Plaintiff, yet he still rejected the appeal on that mere technicality.  See id.  In any event, Assante told Plaintiff to "resubmit" his appeal under the correct grievance number, and he did so promptly within six days.  See Resubmitted Grievance Appeal.  Accordingly, the Court concludes that Plaintiff submitted his appeal in a timely manner and, therefore, that he will be deemed to have satisfied the PLRA's exhaustion requirement.  See Brown, 312 F.3d at 112 (vacating dismissal of case on

---

[4]   See footnote 2, supra.

exhaustion grounds where the plaintiff argued that he relied to his detriment on the defendants' "erroneous or misleading instructions").  Therefore, Defendants have not met their burden of proving the affirmative defense of failure to properly exhaust administrative remedies due to an untimely appeal.

### 2. Supervisory Liability

Defendants Nardolillo and Holms argue that the claims against them must be dismissed because they were not personally involved in the incident and Plaintiff has failed to allege facts sufficient to establish supervisory liability under § 1983.  Liability in a § 1983 action cannot be predicated solely on the operation of *respondeat superior*.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998) (citations omitted).  However, a plaintiff may set forth a claim for supervisory liability under § 1983 if he "(1) identif[ies] the specific supervisory practice or procedure that the supervisor failed to employ, and show[s] that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure."  Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).  It is not enough for a plaintiff to argue that the alleged injury would not have occurred if the supervisor had "done more."  Id.  He must identify specific acts or omissions of the supervisor that evidence deliberate indifference and establish a link between the act or omission and the ultimate injury.  Id.

Defendants Nardolillo and Holms contend that Plaintiff has not set forth a sufficient

claim for supervisory liability against them because he has not alleged that (1) they violated or failed to employ a prison policy or practice, (2) they created an unreasonable risk by violating or failing to employ a prison policy or practice, (3) they were indifferent to any risk created, or (4) Plaintiff suffered an injury from a sanctioned prison policy or practice. See Motion at ¶¶ 8-11. In his Response, Plaintiff claims that Nardolillo and Holms, in their capacities as Warden and Deputy Warden of the prison, failed to properly supervise and adequately train the officers named in the Complaint "in the practice of use of force," and that this failure resulted in the injuries he sustained following an excessive use of force.[5]  Pl's Resp. at ¶¶ 1-4.

Reading these pro se allegations liberally, the Court cannot conclude that there is no set of facts under which Plaintiff might establish supervisory liability against Nardolillo and Holms. Plaintiff has identified an alleged practice – failure to properly supervise and train prison officers in the use of force – which allegedly caused his injuries. Accordingly, Plaintiff's claims against Nardolillo and Holms will not be dismissed at this time.

### 3. Qualified Immunity

Defendants argue that they are entitled to qualified immunity in their individual capacities. See Motion at ¶¶ 13-16. "Qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." James v. York County Police Dep't, 160 Fed. Appx. 126, 134 (3d Cir. 2005). In order to determine whether a defendant is entitled to immunity, the Court must engage in a two-part inquiry: first, whether the challenged

---

[5] Pro se pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." Garland v. Horton, 129 Fed. Appx. 733, 734 (3d Cir. 2005); see also, Thorpe v. Dohman, 2004 WL 2397399, at *2 (E.D. Pa. Oct. 22, 2004).

conduct amounts to a constitutional violation, and second, whether the right was "clearly established" at the time of the alleged deprivation.  See Saucier v. Katz, 533 U.S. 194, 202 (2001).  With respect to the second prong, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id.

In the instant case, Plaintiff has alleged that, while he was handcuffed, Adams sprayed him in the face with pepper spray approximately seven times and then ran him into doors and walls, kicked him several times, and dislocated his right arm.  See Complaint p. 4.  He claims that the incident occurred while he was being escorted to the maximum security lockdown unit by Adams, Jones, Motley and other officers not named in this lawsuit.[6]  See id.  Viewing the allegations in the light most favorable to Plaintiff, the beating, while he was in handcuffs, was unprovoked and unnecessary to maintain order in the prison.  Therefore, Plaintiff has sufficiently set forth an Eighth Amendment claim against Adams for excessive use of force, as well as an Eighth Amendment claim against Jones and Motley for failure to intervene.  See Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) ("In an excessive force claim, the central question is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'") (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)); Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) ("We hold that a correction officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do

---

[6] Although Plaintiff does not mention Motley in the Response's qualified immunity discussion, Plaintiff alleges in the Complaint that Motley was present during the incident.

so").

Plaintiff alleges that Assante improperly denied his grievance appeal as untimely after giving him an extension to resubmit his appeal. The Court recognizes that there is no constitutional right to prison grievance proceedings. See, e.g., Heleva v. Kramer, 2007 WL 215862, at *2 (3d Cir. January 29, 2007) (citation omitted). However, reading the pro se Complaint liberally, the Court must also analyze the claim against Assante as one implicating Plaintiff's right of access to courts under the First and Fourteenth Amendment. In order to prevail on an access to courts claim, Plaintiff must demonstrate that he suffered an actual injury due to the interference with his right of access. Booth v. King, 346 F. Supp. 2d 751, 758 (E.D. Pa. 2004) (citing Lewis v. Casey, 518 U.S. 343 (1996)); Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997)). Since the PLRA requires prisoners properly to exhaust all administrative remedies prior to filing a lawsuit, Assante's denial of Plaintiff's appeal as untimely could have blocked his ability to seek relief before this Court in violation of the First and Fourteenth Amendments.

As the Court discussed above, Plaintiff also has sufficiently set forth claims for supervisory liability against Nardolillo and Holms. Thus, Plaintiff has alleged conduct on the part of all Defendants that, if proven, could amount to constitutional violations under the first part of the Saucier inquiry. Under the second part of the Saucier inquiry, the Court must determine whether Plaintiff's allegedly-violated rights were "clearly established" at the time of the incident. If Plaintiff can prove his allegations, it is not unreasonable to conclude that Defendant Nardolillo, Holms, Adams, Jones, and Motley should have known that involvement in an unprovoked beating of a prisoner – be it through actual participation in the beating, failure to intervene in the beating, or failure to supervise and train officers in the proper use of force –

would violate the Eighth Amendment's well-established right against the excessive use of force. See, e.g., Gailor v. Armstrong, 187 F. Supp. 2d 729, 737 (W.D. Ky. 2001) (noting that liability for use of excessive force under the Eighth Amendment and supervisory liability under the Eighth Amendment are clearly established). Similarly, it is not unreasonable to conclude that Assante should have known that impeding Plaintiff's ability to exhaust his administrative remedies properly would violate the well-established right of access to courts. See, e.g., Cooper v. Beard, 2006 WL 3208783, at *15 (E.D. Pa. November 2, 2006). Accordingly, the motion to dismiss the claims against Defendants on the grounds that they are entitled to qualified immunity will be denied without prejudice. Since "[t]he lack of a sufficient record upon which to decide the qualified immunity issue is of particular concern in a motion to dismiss context," (Cooper v. Beard, 2006 WL 3208783, at * 14 n.15 (E.D. Pa. Nov. 2. 2006)), Defendants may invoke the qualified immunity defense again after discovery has been completed.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' Motion will be denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY WADE | : CIVIL ACTION |
| v. | : NO. 06-5201 |
| WARDEN RONALD NARDOLILLO, et al. | : |

# ORDER

**AND NOW**, this 29th day of May, 2007, upon consideration of "Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to F.R.C.P. 12(b)(6)/Motion for Summary Judgment Pursuant to F.R.C.P. 56" (docket no. 9) and Plaintiff's Response thereto (docket no. 12), and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **DENIED**.

BY THE COURT:

/s/ Bruce W. Kauffman
BRUCE W. KAUFFMAN, J.